PER CURIAM.
We have before us the State’s appeal of the trial court’s order granting J.B. Parker’s posteonviction request for a new penalty phase proceeding. We also have before us Parker’s cross-appeal of the trial court’s order denying his posteonviction request for a new trial. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
In this ease, the trial court granted relief as to a new penalty phase after finding that the State withheld exculpatory evidence that could have changed, within a reasonable probability, the outcome of Parker’s sentence. The trial court denied relief as to a new trial after finding that such evidence would not have resulted in a different verdict in the guilt phase. For the reasons expressed, we affirm the trial court’s order.
*1148 Parker was convicted of kidnaping, robbery with a firearm, and first-degree murder. Briefly, the testimony at trial reflected the following. In 1982, Parker and three other defendants, John Earl Bush, Alphonso Cave, and Terry Wayne Johnson, robbed a convenience store. Money was taken from the store and the female store clerk (the victim) was also taken from the store and placed in Bush’s car. The victim was later found dead; she had been shot and stabbed. Death was caused by a gunshot wound to the back of the head. Bush’s girlfriend testified that Parker had admitted to her that he shot the victim and that Bush had stabbed her. The girlfriend’s mother and sister testified that she told them of Parker’s confession. Parker’s pre-trial statements to police regarding the crime were also introduced and Parker also testified at trial. In those statements, he implicated himself in the crimes but denied being the shooter.
Parker was sentenced to death for the first-degree murder conviction, following an eight-to-four jury recommendation.[1] The facts of this case are set forth in more detail in Parker v. State, 476 So.2d 134 (Fla.1985) (Parker I).
In Parker I, we addressed a number of issues. Specifically pertinent here, we reviewed the testimony of the mother and sister of Bush’s girlfriend. We found that their testimony was inadmissible hearsay; however, we concluded that the admission of this testimony constituted harmless error.
Parker’s codefendants were each tried separately. Bush and Cave each received the death penalty.[2] Johnson was sentenced to life in prison.
Following the direct appeal, Parker filed Florida Rule of Criminal Procedure 3.850 motions with the trial court, which were denied, and petitions for writs of habeas corpus with this Court. In Parker v. State, 542 So.2d 356 (Fla.1989)(Pa.rfcer II), and Parker v. State, 550 So.2d 459 (Fla.1989)(Parfeer III), we affirmed the trial court’s denial of the 3.850 motions and denied the habeas petitions.
After this Court denied relief, Parker filed a petition for writ of habeas corpus in federal district court, which was denied. On appeal, the United States Eleventh Circuit Court of Appeals affirmed that denial of Parker’s ha-beas petition in Parker v. Singletary, 974 F.2d 1562 (11th Cir.1992) (Parker IV). The Eleventh Circuit determined that Parker’s first statements to law enforcement officers, which implicated him in these crimes, were inadmissible. Specifically, the court found that Parker did not knowingly and intelligently waive his right to conflict-free counsel and that the only counsel present at the time the statements were given was an intern sent by the public defender’s office, which had already determined it could not represent Parker because of a conflict. Nevertheless, the Court affirmed the district court’s denial of the habeas corpus petition because it found the error to be harmless given that other statements made by Parker and other testimony supported at least a finding of felony murder. The Court also found that, given the uncertainty of the evidence, Parker’s due process rights were not violated by the State’s having argued in the codefend-ants’ cases that they, rather than Parker, were the shooters.[3]
*1149 In 1993, codefendant Cave received a new sentencing proceeding. During that resen-tencing proceeding, the State introduced testimony from a witness, Michael Bryant, who was in jail with eodefendants Cave and Bush prior to the trial in this ease. Bryant testified at Cave’s resentencing that he shared a cell with Cave and that Bush was two cells away. Bryant related the following regarding the conversation he overheard between the two:
And Bush told Cave, says, we wouldn’t never been in here if you didn’t try to burn her with a cigarette butt. He said, well, you stabbed her in the stomach. And Bush told Cave, he says, well, you popped a cap in the back of her head.
Later Cave told Bryant that if he told anyone about what he overheard he would see that Bryant was “taken care of.” Bryant said he would not tell anyone, but Cave apparently did not believe him, and Cave beat Bryant, sending him to the hospital. Bryant said that when he reported the assault to Lieutenant Art Jackson, Bryant told him of the conversation between Bush and Cave.
Lieutenant Jackson also testified at Cave’s resentencing. He confirmed that Bryant had related the conversation to him. He also stated that Biyant told him what Cave said. Bryant told him that Cave said they stabbed the victim and then Cave got sick of hearing her holler, so he shot her. Lieutenant Jackson further testified that he heard Cave threaten Bryant when he was escorting Cave from the cell to Lieutenant Jackson’s office for questioning (Cave told Bryant “if he would tell what had happened that he would do more to him.”). Lieutenant Jackson stated that he did not include Cave’s admission regarding the murder in his report on the battery because it was not relevant to his investigation.
None of this information had ever been disclosed to Parker. Based on the discovery of Bryant’s testimony upon Cave’s resentenc-ing, Parker filed a rule 3.850 motion alleging that he had discovered material exculpatory information that would have changed, within a reasonable probability, the outcome of his trial. The trial court granted an evidentiary hearing on the issue.
After the hearing, the trial judge granted a new penalty phase proceeding. He found that the State knew of this testimony but never listed Bryant as a witness; that the State failed to provide the information to Parker; that the information was favorable to Parker; that neither Parker nor his attorney could have obtained the information through due diligence; that the testimony would have been admissible in both the guilt and penalty portions of Parker’s trial; that the omission of the information was harmless as to guilt given the Eleventh Circuit’s finding that Parker was guilty of first-degree felony murder; but that the admission of the information probably would have changed the outcome of the penalty phase, especially since the Eleventh Circuit had found certain of Parker’s own statements implicating him in the crime to have been inadmissible.
The State has appealed the trial court’s determination that a new penalty phase proceeding is warranted; Parker has cross-appealed the determination that no new trial is warranted.

State’s Appeal

In appealing the trial court’s decision to grant a new penalty phase, the State concedes that it erroneously failed to disclose Bryant’s statements to Parker. It contends, however, that even if those statements had been disclosed, the statements would not have been material and would not have affected the outcome of Parker’s penalty phase proceeding.
This issue is controlled by the United States Supreme Court decision in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. To obtain relief under Brady, Parker must establish that: (1) the State possessed evidence favorable to his case; (2) he did not possess the evidence nor could he have obtained it through reasonable diligence; (3) the State suppressed the evidence; and (4) a reasonable probability exists that the outcome of the proceedings would have been different had the evidence been disclosed. State v. Buenoano, 707 So.2d 714 (Fla.1998); Mills v. State, 684 So.2d 801 (Fla.1996). In this case, as noted above, the State concedes that it *1150 knew of Bryant’s statements but failed to disclose Bryant’s statements to Parker. It also concedes that Parker could not have obtained this information through any reasonable diligence. Thus, the only issue is whether a reasonable probability exists that the outcome of Parker’s penalty phase proceeding would have been different had the evidence been disclosed.
Under United States v. Bagley, 473 U.S. 667, 682, 106 S.Ct. 3375, 87 L.Ed.2d 481 (1985), a “reasonable probability” is a probability that is sufficient to undermine confidence in the outcome of the proceeding. See also Buenoano; Gorham v. State, 597 So.2d 782 (Fla.1992). Stated otherwise, if the favorable evidence suppressed by the State “could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict,” then Parker is entitled to relief. Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).
In Parker’s guilt and penalty phase proceedings, the State contended that he was the shooter of the victim in this case. Although the victim was stabbed, it is uneon-tested that the victim died from the gunshot wound. However, the only direct evidence to show that Parker was the shooter was the testimony of Bush’s girlfriend. She contended that Parker confessed to her when she went to visit Bush in jail. She admitted that she had met Parker only once prior to this confession, that Bush had asked her to marry him, and that she had visited Bush every day visitation was permitted while he was in jail. No evidence was admitted to show that Parker’s fingerprints were on a weapon. Testimony was introduced to show that Parker was seen in the store approximately two hours prior to the murder, that he was seen with the other three defendants earlier, and that Bush and several unidentified individuals were in the store at the time of the robbery. The only other evidence connecting Parker to the crime consisted of his own statements made to law enforcement officers prior to trial and his testimony at trial.
Parker provided two separate statements to officers before trial. In the first statement, he provided details of the crime. He contended that Bush planned the robbery and murder. He also admitted that he participated in the robbery and he agreed to show officers where the knife used to stab the victim was thrown. In the second statement, he stated that Bush stabbed and shot the victim and he provided additional details which focused primarily on the events after the murder. This second confession provided no details of the events leading up to and during the murder.
It is the first statement that the Eleventh Circuit Court of Appeals determined was wrongfully admitted at trial because it was taken in violation of Parker’s Fifth Amendment right to counsel. It also determined that Parker probably would not have testified at trial but for the introduction of the first statement. The Court, however, found the admission to be harmless in the guilt phase because the second statement was sufficient, in and of itself, to support a finding of felony murder; it found the admission to be harmless in the penalty phase because the statement was highly exculpatory in that Parker did not implicate himself as the shooter in the statement.
Additionally, in Parker II and Parker IV, Parker made an argument before this Court and the Eleventh Circuit that it was inappropriate for the State to have taken inconsistent positions in the codefendant’s trials as to the identity of the shooter. In that argument, Parker asserted that his due process and Eighth Amendments rights were violated because the State took different positions in his trial and the trial of his codefendants as to who fired the fatal shot. He contended that the inconsistent positions of the State at those trials indicated that the State itself had doubts as to whether Parker was the shooter. In Parker II, this Court found that Parker was not precluded from presenting this inconsistency to the jury through an appropriate witness because the codefendants’ trials predated Parker’s trial, because Parker knew the position of the State in those trials, and, most importantly, because Parker’s case was the only one with direct evidence concerning the identity of the shooter. Parker II, 542 So.2d at 357-58. As noted above, that direct evidence was the testimony of Bush’s girl *1151 friend, who stated that Parker had confessed to her that he shot the victim. Id.
In denying this same claim, the Eleventh Circuit concluded in Parker TV that it was not improper for the State to take inconsistent positions so long as it did not involve the use of necessarily contradictory evidence. The court found that the State acted properly in Parker’s ease because, due to lack of evidence, the only inconsistency was in the state’s alternative arguments. Parker TV, 974 F.2d at 1578. As that court stated:
[N]o due process violation occurred, because there was no necessary contradiction between the state’s positions in the trials of the three co-defendants. Given the uncertainty of the evidence, it was proper for the prosecutors in the other co-defendants’ cases to argue alternate theories as to the facts of the murder. The issue of whether the particular defendant on trial physically committed the murder was an appropriate question for each of the co-defendants’ juries.
Id. With the discovery of the Bryant evidence and the fact that the State subsequently relied on that evidence in Cave’s 1993 resentencing proceeding, the State has now relied not only on inconsistent positions; it has relied on inconsistent evidence. In Parker’s case it relied on the testimony of Bush’s girlfriend to establish Parker as the shooter, and in Cave’s case it relied on the testimony of Bryant and Lieutenant Jackson to establish Cave as the shooter.[4]
In summary, an examination of the circumstances in Parker’s case reflects the following. This Court determined in Parker I that the testimony of Bush’s girlfriend’s sister and mother were erroneously admitted at trial to bolster the girlfriend’s testimony regarding Parker’s alleged confession to her that he shot the victim. In Parker TV, the Eleventh Circuit Court of Appeals concluded that Parker’s first statement was wrongly admitted and that Parker would probably not have testified but for the admission of that statement. And now, the State concedes that it suppressed evidence that was favorable to Parker and relied on that evidence in taking an inconsistent position in Cave’s re-sentencing. This evidence would have assisted in impeaching the testimony of Bush’s girlfriend, which was the sole evidence to show that Parker was the shooter. Further, Parker would have been able to use this evidence to show that the State introduced this evidence in Cave’s resentencing to prove that Cave, rather than Parker, was the shooter. Under these circumstances, we must agree with the trial judge’s conclusion that confidence in the jury’s recommendation of death has been undermined, especially given that the jury recommendation for death in Parker’s case was eight-to-four and that co-defendant Johnson, who was not identified as the shooter by the State, received a life sentence even though he participated in the crime. See Johnson v. State, 484 So.2d 1347 (Fla. 4th DCA1986).
Accordingly, we affirm the trial judge’s order granting Parker a new penalty phase proceeding. In concluding that Parker is entitled to a new penalty phase proceeding, we note that he is still eligible for the death penalty. As explained in the following analysis of Parker’s cross-appeal, he is at a minimum guilty of felony murder because, even if he was not the shooter, he was a major participant in the felony committed and exhibited reckless indifference to human life. Thus, he is death penalty eligible. See Tison v. Arizona, 481 U.S. 137, 158, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) (major participation in felony committed combined with reckless indifference to human life sufficient to satisfy culpability requirement for imposing death sentence). See also Cave v. State, 476 So.2d 180, 187 (Fla.l985)(where Cave admitted holding gun on clerk during robbery and forcing her into ear; was present in car during thirteen-mile ride and heard her plead for her life; and was present when she was forcibly removed from car in a rural area, stabbed, and shot in back of head; *1152 it cannot be reasonably said that Cave did not contemplate use of lethal force or participate in or facilitate murder so as to be death ineligible).

Parker’s Cross-Appeal

In his cross-appeal, Parker contends that he is entitled to a new trial. First, he asserts that, under the circumstances, like the penalty phase proceeding, the confidence in the outcome of the guilt phase as been undermined as well. Second, he contends that, under Green v. Georgia, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), his due process rights were violated by the State’s use of inconsistent evidence in support of its inconsistent positions at the trials of his co-defendants.
As to the first contention, Bryant’s testimony goes only to a determination regarding premeditated murder. The testimony does not undermine confidence in the outcome of the verdict as to Parker’s participation in the underlying felonies, which, as in codefendant Johnson’s ease, supports a finding of felony murder. In Parker’s second statement to police, he pointed out to officers where the victim’s body was found; he showed officers where the knife had been thrown from the car; he indicated where the police had stopped the ear after the murder; he stated that the defendants had considered shooting the deputy who stopped them; he showed officers where they went to hide the gun and split up the money from the robbery; and he admitted he received between twenty and thirty dollars of the robbery proceeds. Further, he was seen in the store just prior to the robbery and murder; he had been seen with the other three defendants earlier; and the police officer who stopped Bush’s car after the murder stated that Bush and three other occupants were in the vehicle. Based on this evidence, there is no reasonable probability that confidence in the verdict has been undermined as it applies to Parker’s guilt of felony murder.
As to the second argument, the underlying rationale in Green was that the defendant was deprived of a fair trial as to punishment because he was not allowed to introduce evidence that had been used by the State in a codefendant’s trial to establish that the code-fendant was the one who actually murdered the victim. The United States Supreme Court concluded that the defendant was entitled to a penalty phase proceeding due to the exclusion of that evidence because that evidence was “highly relevant to a critical issue in the punishment phase of the trial.” 442 U.S. at 97, ¾9 S.Ct. 2150. The evidence used by the State in Cave’s resentencing was relevant to the identity of the shooter, which in turn was relevant to a finding of premeditated murder and to Parker’s sentence. However, it was not relevant to a finding of felony murder. Consequently, we conclude that Parker was not deprived of a fair trial as to his conviction.[5]
Accordingly, for the reasons expressed, we affirm the trial court’s order denying Parker a new trial and granting him a new penalty phase proceeding.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.

. The trial judge found five aggravators: (1) pri- or violent felony; (2) commission during a kid-naping and robbery; (3) commission for pecuniary gain; (4) heinous, atrocious, or cruel; and (5) cold, calculated, and premeditated. In mitigation, the trial judge found that the victim was not sexually molested, that Parker was young (19 at the time of the crime), and that Parker's behavior at trial was acceptable.

. Bush has since been executed. Cave has had three separate penalty phase proceedings, the last of which is currently pending before this Court. See Cave v. State, No. 90,165 (Fla. notice of appeal filed Mar. 24, 1997).

. Parker filed a motion for rehearing in the Eleventh Circuit’s case, which motion was still pending as of the date of this opinion. That is because Parker requested a stay of the rehearing, asking that the outcome of the Eleventh Circuit's case be stayed pending the outcome of the instant 3.850 motion. The Court granted the stay. Thus, although the Eleventh Circuit’s opinion has been published, the Eleventh Circuit has not yet ruled on the motion for rehearing. Apparently, should the Eleventh Circuit grant the motion for rehearing, Parker TV would be vacated.

. Although not pertinent to the resolution of the issue in this case, in Cave’s appeal of his 1993 resentencing, we again ordered a new resentenc-ing proceeding in his case due to errors that occurred in the proceeding. See Cave v. State, 660 So.2d 705 (Fla.1995). In this last resentenc-ing, Cave again received the death penally, but Bryant’s testimony was not used in that proceeding. See Cave v. State, No. 90,165 (Fla. notice of appeal filed Mar. 24, 1997).

. Because we conclude that Parker was not deprived of a fair trial as to guilt and that confidence in the outcome of his guilt phase proceeding was not undermined as to a finding of felony murder, we do not address the State’s argument that the Bryant testimony would have been inadmissible in the guilt phase of Parker's trial.